## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF TRENTON

| | |
|---|---|
| **ANYCLO INTERNATIONAL INC., a corporation,** | **Civil Action** |
| **Plaintiff,** | **Case No. 3:18-CV-05759** |
| **vs.** | |
| **YANG-SUP CHA, an individual, NAM-HEE KIM, an individual, STAFFORD CHA, an individual, ANYCLO USA, INC., a corporation, MOJO MOTO, LLC, a corporation, JOHN DOES (1-20), JANE DOES (1-20) and ABC CORPORATIONS (1-10),** | |
| **Defendants.** | **Document Electronically Filed.** |

## PLAINTIFF ANYCLO INTERNATIONAL, INC.'S
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Gregory J. Cannon Esq.
Sobel Han & Cannon, LLP
105 Reids Hill Road, Suite B
Aberdeen, New Jersey 07747
(201) 603-3697 (phone)
(646) 513-2648 (fax)
gcannon@sobelhan.com

## PROPOSED FINDINGS OF FACT

### A. Introduction.

1.      Plaintiff Anyclo International, Inc. ("Plaintiff") is a textile manufacturer with factories in various parts of Asia, and provides finished goods to clothing retailers in the United States.  <u>See</u> Trial Testimony of Dong Geun Song; <u>see also</u> Trial Testimony of Yang-Sup Cha.

2.      Plaintiff's President is Dong Geun Song, who is commonly referred to by his English name of "Hopkins."  <u>See</u> Trial Testimony of Dong Geun Song; <u>see also</u> Trial Testimony of Yang-Sup Cha.

3.      Defendants Yang-Sup Cha ("YS Cha") and Nam-Hee Kim ("NH Kim") are husband and wife, residing in Manalapan, New Jersey, and Defendant Stafford Cha is their adult son.  <u>See</u> Trial Testimony of Yang-Sup Cha; <u>see also</u> Trial Testimony of Nam-Hee Kim.

4.      Prior to 2016, YS Cha had worked for more than twenty years in the textile industry, both for his own company and for other companies.  <u>See</u> Trial Testimony of Yang-Sup Cha.

### B. The Parties' First Meeting in South Korea and E-Mail Negotiation of Agreement.

5.      In September 2016, YS Cha was recommended to Plaintiff's President, Mr. Song, by a mutual business acquaintance working for Milogix, as a potential agent in the United States who could create business for Plaintiff in the New York region.  <u>See</u> Plaintiff's Trial Exhibit P-1 (Pages 1-4); <u>see also</u> Trial Testimony of Dong Geun Song.

6.      On September 26, 2016, Mr. Song and YS Cha met for the first time at Plaintiff's headquarters in Seoul, South Korea to discuss Plaintiff's potentially hiring YS Cha to market its goods in the New York region.  <u>See</u> Plaintiff's Trial Exhibit P-1 (Pages 1-4); <u>see also</u> Trial Testimony of Dong Geun Song; <u>see also</u> Trial Testimony of Yang-Sup Cha.

7.      Throughout October 2016, Plaintiff and YS Cha corresponded regarding their business plans, and negotiated Plaintiff's payment of compensation, expenses, and incentives to YS Cha, and discussed YS Cha's incorporation of Anyclo USA, Inc. to receive orders and process payments from new American customers.  See Plaintiff's Trial Exhibit P-1 (Pages 9-11); see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

8.      By e-mail dated October 19, 2016, YS Cha falsely represented to Plaintiff that the costs of creating Anyclo USA, Inc. were $10,726.00.  See Plaintiff's Trial Exhibit P-1 (Page 9).

9.      Relying upon YS Cha's misrepresentations as to the costs of creating Anyclo USA, Inc., on November 2, 2016, Plaintiff wired $10,000.00 to the Chase Bank account of Defendant Stafford Cha at the behest of YS Cha.  See Plaintiff's Trial Exhibits P-6 (Page 13) & P-12.

10.      In actuality, YS Cha paid only $500.00 to Daniel Cho, CPA to incorporate Anyclo USA, Inc., inclusive of all fees.  See Plaintiff's Trial Exhibit P-19 – Deposition of Daniel Cho, CPA (Page 22: Lines 3-24).

11.      Using the $10,000.00 wire transfer obtained from Plaintiff, Defendant Stafford Cha disbursed a $5,000.00 check to his mother, NH Kim, and disbursed $2,959.89 in electronic payments to his parents' credit cards, with the remainder being spent on consumer purchases, particularly at Best Buy.  See Plaintiff's Trial Exhibits P-6 (Page 13) & P-12; see also Trial Testimony of Yang-Sup Cha.

12.      By e-mail dated October 19, 2016, YS Cha also misrepresented to Plaintiff that the operating expenses of Anyclo USA, Inc. would be about $12,000.00 per month, which, inter alia, included: $2,558.57 purported monthly office license fees and expenses, $8,962.23 salary and taxes, $214.20 purported workers' compensation, $250.00 purported accounting fee, and a $15.00 wire fee.  See Plaintiff's Trial Exhibits P-1 (Page 10) & P-5.

13.     The negotiations between Plaintiff and YS Cha regarding compensation, expenses, and incentives continued into November/December 2016.  See Plaintiff's Trial Exhibit P-1 (Page 27); see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

14.     By e-mail dated November 30, 2016, Plaintiff wrote to YS Cha, stating "Please review the Anyclo USA Business and Incentive Plan below.  It has been drafted so that you receive 20% of operating profits + sales incentive upon achieving the business plan."  See Plaintiff's Trial Exhibit P-1 (Page 27) (emphasis added).

15.     In that same November 30, 2016 e-mail, Plaintiff set forth a business plan of $5,000,000 in sales for YS Cha to receive $50,000 (20% of operating profit), and then set forth further incentives for achieving $6,000,000; $7,000,000; and $8,000,000 in sales, with the "2017 Business Plan" table therein clearly showing a $5,000,000 business plan and containing the words "upon achieving business plan" in two places on the e-mailed offer.  See Plaintiff's Trial Exhibit P-1 (Page 27); see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Cris Lee.

16.     By e-mail dated December 4, 2016, YS Cha responded that the proposal was "a bit less than the incentives I have agreed to so far," but he agreed to it, writing that "I will comply with the company's decision for the first two years" – thereby accepting Plaintiff's proposal.  See Plaintiff's Trial Exhibit P-1 (Page 27); see also Trial Testimony of Dong Geun Song.

17.     Nonetheless, in that same December 4, 2016 e-mail, YS Cha counter-offered that "[o]ne thing I would like to request again is the monthly (transportation cost) allowance ($1,000)." See Plaintiff's Trial Exhibit P-1 (Page 27); see also Trial Testimony of Yang-Sup Cha.

18.     Plaintiff agreed to provide YS Cha with the transportation allowance of $1,000.00, increasing the expenses of Anyclo USA, Inc. to $13,000.00 per month from the already-inflated $12,000.00 per month misrepresented by YS Cha.  See Trial Testimony of Dong Geun Song.

**C.  Operation of Anyclo USA, Inc. and YS Cha's Misrepresentations as to Expenses.**

19.     In accordance with the parties' agreement, YS Cha opened a bank account at Bank of America for Anyclo USA, Inc.'s operations, however, he made himself the only authorized signatory on said account.  See Plaintiff's Trial Exhibits P-1 (Page 10) & P-7 & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

20.     Under the parties' agreement for the operation of Anyclo USA, Inc, (1) YS Cha sold orders for Plaintiff's goods to American buyers; (2) Plaintiff fulfilled those orders by shipping goods directly to the American buyers from Asia; (3) the buyers paid Anyclo USA, Inc.'s bank account; and (4) YS Cha was to wire the sales proceeds from Anyclo USA, Inc.'s American bank account to Plaintiff's South Korean bank account.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

21.     In return for his work, Plaintiff agreed to pay YS Cha compensation and expenses of $13,000.00 per month, which was based upon YS Cha's misrepresentations regarding the actual expenses being incurred by Anyclo USA, Inc.  See Plaintiff's Trial Exhibits P-1 (Pages 10 & 27) & P-5; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

22.     Every month during the operation of Anyclo USA, Inc. from November 2016 to January 2018, YS Cha provided fraudulent accountings to Plaintiff to justify his $13,000.00 in monthly compensation and expense payments.  See Plaintiff's Trial Exhibit P-5.

23.     On his fraudulent monthly accountings to Plaintiff, YS Cha claimed that Anyclo USA, Inc. was paying $2,558.57 in monthly office license fees and expenses in New York City, based upon a License Agreement that YS Cha had originally provided to Plaintiff in late 2016 during the parties' negotiations.  See Plaintiff's Trial Exhibits P-2 & P-5; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

24.     Subsequent investigation by Plaintiff found the true and correct November 2016 License Agreement, from which the first two pages were altered by YS Cha to indicate an increased rent from $1,800.00 to $2,100.00, plus also-inflated expenses, all payable to Mojomoto, LLC – a company owned by his wife, NH Kim.  See Plaintiff's Trial Exhibits P-2 & P-3; see also Trial Testimony of Yang-Sup Cha; see also Trial Testimony of Nam-Hee Kim.

25.     During trial testimony, YS Cha admitted creating a third License Agreement after the filing of this litigation, and confirmed that he created the third License Agreement to produce in discovery with Mojomoto, LLC removed, when he realized Plaintiff would investigate the matter.  See Plaintiff's Trial Exhibit P-19; see also Trial Testimony of Yang-Sup Cha.

26.     During trial testimony, YS Cha admitted that Anyclo USA, Inc. did not pay any of the $250.00 monthly accounting fees listed on his fraudulent monthly accountings provided to Plaintiff, and Daniel Cho, CPA confirmed that he never received any payments from YS Cha for the "monthly accounting maintenance" listed on YS Cha's fraudulent monthly accountings.  See Plaintiff's Trial Exhibit P-5; see also Trial Testimony of Yang-Sup Cha; see also Plaintiff's Trial Exhibit P-19 – Deposition of Daniel Cho, CPA (Page 27: Line 20 to Page 28: Line 13).

27.     During trial testimony, YS Cha also admitted that Anyclo USA, Inc. never paid $214.20 in workers' compensation insurance, which was consistently listed on YS Cha's fraudulent monthly accountings to Plaintiff, because Anyclo USA, Inc. had no actual employees. See Plaintiff's Trial Exhibit P-5; see also Trial Testimony of Yang-Sup Cha.

28.      Relying on YS Cha's fraudulent accountings, every month from November 2016 to January 2018, Plaintiff provided $13,000.00 to YS Cha for his compensation and expenses – at first into Defendant Stafford Cha's Chase account, and then into Anyclo USA, Inc.'s Bank of America account.  See Plaintiff's Trial Exhibits P-5 & P-6 & P-7 & P-12 & P-13.

**D. Defendants' Conversion of Third-Party Buyer Funds from Anyclo USA's Account.**

29.     During the operation of Anyclo USA, Inc. by YS Cha, third-party buyers to whom YS Cha had sold orders and Plaintiff had delivered goods would make payments for those goods into Anyclo USA, Inc.'s Bank of America account.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

30.     As the sole signatory, YS Cha was supposed to transmit those sales proceeds to Plaintiff in South Korea in payment for the goods that had been delivered by Plaintiff to Anyclo USA, Inc.'s American buyers.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

31.     This agreement between Plaintiff and YS Cha is evidenced by the fact that, from December 1, 2016 to August 31, 2017, Anyclo USA, Inc. received payments totaling $579,310.08 from third-party buyers.  See Plaintiff's Trial Exhibits P-7 (Pages 19 & 27 & 35) & P-13.

32.     Then, between December 1, 2016 and August 31, 2017, YS Cha transmitted $571,336.83 in third-party buyer funds to Plaintiff from Anyclo USA, Inc.'s bank account.  See Plaintiff's Trial Exhibits P-7 (Pages 23 & 27 & 35) & P-13.

33.     As of August 21, 2017, Anyclo USA, Inc.'s bank account contained $7,973.25 in third-party buyer funds, and both YS Cha and Plaintiff were aware of the retained fund balance. See Plaintiff's Trial Exhibits P-7 (Page 35) & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

34.     On August 24, 2017, Plaintiff deposited only $10,000.00 into Anyclo USA, Inc.'s account, instead of the $13,000.00 sought by YS Cha's monthly accounting, because Plaintiff told YS Cha to use the $7,973.25 in retained third-party funds as the difference.  See Plaintiff's Trial Exhibits P-5 (Page 11) & P-7 (Page 35) & P-13; see also Trial Testimony of Dong Geun Song.

35.     According to his own trial testimony, YS Cha somehow considered Plaintiff's $10,000.00 payment on August 24, 2017, plus the $3,000.00 in the retained third-party buyer funds, instead of the $13,000.00 he requested to be wired, as a "breach" of the parties' agreement as to Anyclo USA, Inc.  See Trial Testimony of Yang-Sup Cha.

36.     Notably, YS Cha had already withdrawn almost the entire retained balance of $7,973.25 from Anyclo USA, Inc.'s account via a $7,000.00 check payable to his wife, NH Kim, the day before, on August 23, 2017.  See Plaintiff's Trial Exhibits P-7 (Pages 35 & 141) & P-13.

37.     Beginning in September 2017, YS Cha started delaying transmissions of third-party buyer funds to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Pages 41-127) & P-13.

38.     On September 12, 2017, a third-party buyer (Moret) deposited $181,942.26 into Anyclo USA, Inc.'s bank account for goods delivered directly to the buyer by Plaintiff, but YS Cha transmitted to Plaintiff only $45,793.00 on September 19, 2017, and only another $34,659.00 on October 16, 2017, and then only $48,439.50 on November 8, 2017 (totaling just $128,891.50). See Plaintiff's Trial Exhibits P-7 (Pages 41 & 45 & 49) & P-13.

39.     As of November 30, 2017, Anyclo USA, Inc.'s bank account should have contained $61,024.01 in third-party buyer funds for the benefit of Plaintiff, but YS Cha had already begun converting those funds for the use of his wife, NH Kim, and himself – and therefore, the overall balance of the account was just $54,776.17.  See Plaintiff's Trial Exhibits P-7 (Page 49) & P-13; see also Trial Testimony of Cris Lee.

40.     On December 8, 2017 and December 15, 2017, a third-party buyer (R.P.R.) paid $119,697.68 into Anyclo USA, Inc.'s bank account in two (2) deposits of $59,848.84 each, but YS Cha wired only $46,250.88 from Anyclo USA, Inc. to Plaintiff on December 15, 2017.  See Plaintiff's Trial Exhibits P-7 (Page 49) & P-13; see also Trial Testimony of Cris Lee.

41.     After Plaintiff's receipt of that wire payment of $46,250.88 on December 15, 2017, YS Cha completely stopped forwarding any third-party buyer funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Cris Lee.

42.     On January 12, 2018, third-party buyer (Moret) paid $97,790.54 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

43.     On January 16, 2018, a third-party buyer (R.P.R.) paid $35,226.00 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

44.     On January 19, 2018, third-party buyer (R.P.R.) paid another $35,226.00 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

45.     As of January 31, 2018, Anyclo USA, Inc.'s bank account should have contained $302,713.35 in third-party buyer funds for the benefit of Plaintiff, but YS Cha had continued converting those funds for the use of his wife, NH Kim, and himself – and therefore, the overall balance of the account was just $270,919.09.  See Plaintiff's Trial Exhibits P-7 (Page 60) & P-13; see also Trial Testimony of Cris Lee.

46.     By e-mail dated February 1, 2018, Plaintiff questioned YS Cha as to the payments received by Anyclo USA, Inc. from third-party buyer R.P.R. in December 2017 and January 2018, but which funds were not forwarded from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibit P-10 (Page 1); see also Trial Testimony of Dong Geun Song.

47.     At the time, Plaintiff had already checked with third-party buyer R.P.R., and knew the payments had been received by Anyclo USA, Inc.  See Trial Testimony of Dong Geun Song.

48.     By e-mail dated February 1, 2018, YS Cha lied to Plaintiff, stating "The payment has been scheduled for the end of February," when such payments had already been received by Anyclo USA, Inc. from third-party buyer R.P.R. in December 2017 and January 2018.   See Plaintiff's Trial Exhibits P-10 (Page 1) & P-7 (Page 49 & 59) & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Cris Lee.

49.     On February 8, 2018, third-party buyer (Moret) paid $254,671.78 into Anyclo USA, Inc.'s account for goods delivered by Plaintiff, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.   See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13.

50.     By e-mail dated February 12, 2018, Plaintiff questioned YS Cha as to the payments received by Anyclo USA, Inc. from third-party buyer Moret in January and February 2018, but which funds were not forwarded from Anyclo USA, Inc. to Plaintiff.   See Plaintiff's Trial Exhibit P-10 (Page 3); see also Trial Testimony of Dong Geun Song.

51.     Again, Plaintiff had already checked with third-party buyer Moret, and knew the payments had been received by Anyclo USA, Inc.   See Trial Testimony of Cris Lee.

52.     By e-mail dated February 12, 2018, despite Anyclo USA, Inc.'s receiving a $254,671.78 payment from third-party buyer Moret on February 8, 2018, YS Cha again lied to Plaintiff, stating "I will request confirmation and inform you."   See Plaintiff's Trial Exhibits P-10 (Page 5) & P-7 (Page 49 & 59) & P-13; see also Trial Testimony of Cris Lee.

53.     As of February 22, 2018, Anyclo USA, Inc.'s bank account should have contained $568,653.32 in third-party buyer funds for the benefit of Plaintiff, but YS Cha had continued converting those funds for the use of his wife, NH Kim, and himself – and therefore, the overall balance of the account was just $536,859.06.   See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13; see also Trial Testimony of Cris Lee.

54.     Given YS Cha's retention and conversion of $568,653.32 in third-party buyer funds within Anyclo USA, Inc.'s account, Plaintiff refused to transmit YS Cha's $13,000.00 in monthly compensation and expenses to Anyclo USA, Inc.'s bank account for February 2018.  See Plaintiff's Trial Exhibit P-10 (Page 7); see also Trial Testimony of Dong Geun Song.

55.     By e-mail dated February 23, 2018, Plaintiff demanded that YS Cha forward the $568,653.32 in third-party buyer funds due to Plaintiff but being held by YS Cha in Anyclo USA, Inc.'s Bank of America account.  See Plaintiff's Trial Exhibit P-10 (Pages 9 & 10); see also Trial Testimony of Dong Geun Song.

56.     By this time, YS Cha was aware that Plaintiff was underreporting its declarations of custom duties owed on the goods being delivered to Anyclo USA, Inc.'s American buyers from Asia.  See Defendants' Trial Exhibits D-39 & D-40; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

57.     By e-mail dated February 24, 2018, YS Cha responded to Plaintiff's demands for the $568,653.32 in third-party buyer funds being held in Anyclo USA, Inc.'s account, by pointedly replying, "I would like to inform you that Hopkins should be the one who has to approach to resolve this … [o]therwise, consequences will be considered."  See Plaintiff's Trial Exhibit P-10 (Page 9); see also Trial Testimony of Dong Geun Song.

58.     By e-mail also dated February 24, 2018, YS Cha followed up, now threatening, "Like you said, if you do not want further problems, I demand a proper apology email sent to the buyers clearly stating that the unpaid salaries will be made to ANCLO USA [sic]."  See Plaintiff's Trial Exhibit P-10 (Page 8); see also Trial Testimony of Dong Geun Song.

59.     By e-mail dated February 26, 2018, Plaintiff responded to YS Cha, with Mr. Song writing on behalf of Plaintiff: "It does not make sense to demand $13,000 salary while holding $547,472.08 … I clearly mentioned that I do not want further problem [sic]."  See Plaintiff's Trial Exhibit P-10 (Pages 7-8); see also Trial Testimony of Dong Geun Song.

60.     Thereafter, Mr. Song traveled to the United States to meet with YS Cha on behalf of Plaintiff; first receiving no response at YS Cha and NH Kim's residence in Manalapan, New Jersey, and eventually, meeting with YS Cha on March 19, 2018 in New York City.  See Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

61.     On March 19, 2018, Mr. Song met with YS Cha, whereat YS Cha demanded that Plaintiff restore the parties' relationships, and agreed to transmit $250,000.00 from Anyclo USA, Inc. to Plaintiff as a "sign of good faith."  See Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

62.     On March 20, 2018, YS Cha transmitted the $250,000.00 from Anyclo USA, Inc.'s account to Plaintiff's South Korean bank account.  See Plaintiff's Trial Exhibits P-7 (Page 69) & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

63.     Meanwhile, without informing Plaintiff or Mr. Song at their March 2018 meeting, from February 22, 2018 to March 20, 2018, YS Cha had already disbursed or spent from Anyclo USA, Inc.'s account a total of $131,099.75, as follows:

    a.  $120,545.85 in checks written to his wife, NH Kim;

    b.  $3,628.90 to his personal Capital One credit card;

    c.  $5,000.00 retainer to Graham Curtin in anticipation of this litigation; and

    d.  $1,925.00 to Times Square Suites, LLC.

See Plaintiff Trial Exhibits P-7 (Pages 65 & 69 & 150-160) & P-13.

64.     Following YS Cha's payment of $250,000.00 to Plaintiff on March 20, 2018, Anyclo USA, Inc.'s account should have contained $318,653.32 in third-party buyer funds for the benefit of Plaintiff, but YS Cha had continued converting those funds for the use of his wife, NH Kim, and himself – and therefore, the overall balance of the account was just $155,759.31.  See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13; see also Trial Testimony of Cris Lee.

65.     On April 9, 2018, Plaintiff filed the instant litigation against Defendants seeking recovery of the third-party buyer funds held by YS Cha in Anyclo USA, Inc.'s bank account.  See Complaint [Document #1].

66.     Meanwhile, from March 20, 2018 to August 1, 2018, YS Cha disbursed or spent from Anyclo USA, Inc.'s bank account another $37,279.66, as follows:

   a.  $13,000.00 check written to his wife, NH Kim;

   b.  $1,295.79 on personal expenses in South Korea;

   c.  $15,000.00 in legal expenses paid to McElroy Deutsch for this litigation;

   d.  $7,700.00 to Times Square Suites, LLC;

   e.  $200.00 to Daniel Cho, CPA for his personal tax returns; and

   f.  $83.87 in bank charges.

See Plaintiff Trial Exhibits P-7 (Pages 69 & 70 & 73 & 77 & 85 & 89 & 161-167) & P-13.

67.     In July 2018, YS Cha followed through on his February 2018 e-mailed threat of "further problems" by reporting Plaintiff to authorities for under-declaring its customs duties on textile shipments into the United States from Asia.  See Defendants' Trial Exhibits D-39 & D-40.

68.     On August 2, 2018, despite the end of Plaintiff and YS Cha's relationship, a third-party buyer (Moret) used on-file wire information and mistakenly paid $97,286.46 into Anyclo USA, Inc.'s Bank of America account.  See Plaintiff Trial Exhibits P-7 (Page 97) & P-13.

69.     The mistaken $97,286.46 payment by Moret into Anyclo USA, Inc.'s bank account increased the amount of third-buyer funds possessed or converted by YS Cha from $318,653.32 to $415,939.78.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Cris Lee.

70.     YS Cha did not respond or acknowledge the mistaken $97,286.46 payment and continued converting all funds in Anyclo USA, Inc.'s bank account for the use of his wife, NH Kim, and himself.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Cris Lee.

71.     As of August 2, 2018, Anyclo USA, Inc.'s account should have contained $415,939.78 in third-party buyer funds for the benefit of Plaintiff, but Defendants' conversion of those funds left the overall balance of the account at just $215,766.11.  See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13; see also Trial Testimony of Cris Lee.

72.     From August 2, 2018 to December 3, 2018, YS Cha disbursed or spent from Anyclo USA, Inc.'s bank account another $39,053.76, as follows:

    a. $8,000.00 check written to his wife, NH Kim;

    b. $25,278.76 in legal expenses paid to McElroy Deutsch for this litigation; and

    c. $5,775.00 to Times Square Suites, LLC.

See Plaintiff Trial Exhibits P-7 (Pages 97 & 103 & 111 & 115 & 123 & 168-174) & P-13.

73.     As of December 3, 2018, Anyclo USA, Inc.'s account should have contained $415,939.78 in third-party buyer funds for the benefit of Plaintiff, but Defendants' conversion of those funds left the overall balance of the account at just $176,712.35.  See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13; see also Trial Testimony of Cris Lee.

74.     Upon the motion of Plaintiff, and the eventual consent of Defendants, by Court Order dated December 4, 2018, Defendants were ordered to pay all remaining funds in Anyclo USA, Inc.'s bank account into the Court's trust fund.  See Plaintiff's Trial Exhibit P-11.

75.     On December 19, 2018, Defendants paid all remaining funds, totaling $176,712.35, into the Court's trust fund.  <u>See</u> Plaintiff's Trial Exhibits P-7 (Pages 123 & 175) & P-13

76.     At the time of Defendants' payment into court, Anyclo USA, Inc.'s Bank of America account should have contained $415,939.78 in third-party buyer funds, but the balance of the account was just $176,712.35 – meaning that Defendants withdrew, spent or converted $239,227.43 in funds belonging to Plaintiff between August 21, 2017 and December 19, 2018. <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see</u> <u>also</u> Trial Testimony of Cris Lee.

77.     On January 4, 2019, Anyclo USA, Inc.'s account received a deposit in the amount of $3,367.22 as the return of security deposit from Anyclo USA, Inc.'s office License Agreement. <u>See</u> Plaintiff's Trial Exhibits P-7 (Page 127) & P-13; <u>see</u> <u>also</u> Trial Testimony of Cris Lee.

78.     Despite the existence of the Court's December 4, 2018 Order, Defendants did not inform Plaintiff of the security deposit return, and thereafter, Defendants withdrew all of the security deposit funds from the account in cash.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13.

## PROPOSED CONCLUSIONS OF LAW

**A. Jurisdiction.**

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties in this matter are diverse and the amount in controversy exceeds $75,000.00.

2.      This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1965.

**B. Breach of Contract.**

3.      To sustain a breach of contract claim under New Jersey law, a plaintiff must prove that (1) "the parties entered into a contract containing certain terms"; (2) "plaintiffs did what the contract required them to do"; (3) "defendants did not do what the contract required them to do"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." See Goldfarb v. Solimine, 245 A.3d 570, 577 (N.J. 2021) (internal quotations omitted).

4.      That is, the essential elements for breach of contract claim are "a valid contract, defective performance by the defendant, and resulting damages." See Coyle v. Englander's, 488 A.2d 1083 (App.Div.1985).

5.      Each element must be proven by a preponderance of the evidence. See Liberty Mut. Ins. Co. v. Land, 892 A.2d 1240 (2006).

6.      "The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement."  See Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987).

7.      Unlike express contracts that are formed by words or writings, implied contracts arise from the parties' conduct, and whether the defendant's conduct, "as viewed by a reasonable person in the relevant custom or trade, revealed a promise to pay." See Duffy v. Charles Schwab, 123 F. Supp. 2d 802, 817 (D.N.J. 2000).

8.      In this case, YS Cha and Plaintiff did not enter into any formal contract or agreement for the operation of Anyclo USA, Inc.  <u>See</u> Plaintiff's Trial Exhibit P-1.

9.      The parties' agreement to incorporate and operate Anyclo USA, Inc. arose from meetings, discussions, and e-mailed correspondence between Plaintiff and YS Cha during October and November 2016.  <u>See</u> Plaintiff's Trial Exhibit P-1; <u>see</u> <u>also</u> Trial Testimony of Dong Geun Song; <u>see</u> <u>also</u> Trial Testimony of Yang-Sup Cha.

10.     During October 2016, Plaintiff and YS Cha corresponded regarding their business plans, and negotiated Plaintiff's payment of compensation, expenses, and incentives to YS Cha, and discussed YS Cha's creation of Anyclo USA, Inc.  <u>See</u> Plaintiff's Trial Exhibit P-1 (Pages 9-11); <u>see</u> <u>also</u> Trial Testimony of Dong Geun Song; <u>see</u> <u>also</u> Trial Testimony of Yang-Sup Cha.

11.     The negotiations between Plaintiff and YS Cha regarding compensation, expenses, and incentives continued into November/December 2016.  <u>See</u> Plaintiff's Trial Exhibit P-1 (Page 27); <u>see</u> <u>also</u> Trial Testimony of Dong Geun Song; <u>see</u> <u>also</u> Trial Testimony of Yang-Sup Cha.

12.     By e-mail dated November 30, 2016, Plaintiff wrote to YS Cha, stating "Please review the Anyclo USA Business and Incentive Plan below."  <u>See</u> Plaintiff's Trial Exhibit P-1 (Page 27) (emphasis added).

13.     In that same November 30, 2016 e-mail, Plaintiff set forth a business plan of $5,000,000 in sales for YS Cha to receive a $50,000 incentive, and then set forth incentives for achieving up to $8,000,000 in sales, with the "2017 Business Plan" table therein clearly showing a $5,000,000 target and containing the words "upon achieving business plan" in two places on the e-mailed offer.  <u>See</u> Plaintiff's Trial Exhibit P-1 (Page 27); <u>see</u> <u>also</u> Trial Testimony of Dong Geun Song; <u>see</u> <u>also</u> Trial Testimony of Cris Lee.

14.     By e-mail dated December 4, 2016, YS Cha accepted Plaintiff's Anyclo USA Business and Incentive Plan, writing that "I will comply with the company's decision for the first two years." <u>See</u> Plaintiff's Trial Exhibit P-1 (Page 27).

15.     In that same December 4, 2016 e-mail, YS Cha counter-offered that "[o]ne thing I would like to request again is the monthly (transportation cost) allowance ($1,000)." <u>See</u> Plaintiff's Trial Exhibit P-1 (Page 27); <u>see also</u> Trial Testimony of Yang-Sup Cha.

16.     Plaintiff agreed to provide YS Cha with the transportation allowance of $1,000.00, increasing the anticipated expenses to $13,000.00 per month to be paid by Plaintiff to Anyclo USA, Inc.'s account.  <u>See</u> Trial Testimony of Dong Geun Song.

17.     YS Cha never "achieved the business plan" of $5,000,000 in sales in 2017 or 2018 (combined for that matter), and despite his "counterclaim" for additional compensation/incentives in this litigation, no such incentives were earned by YS Cha, nor owed to YS Cha by Plaintiff.  <u>See</u> Plaintiff's Trial Exhibits P-1 & P-13.

18.     On the other hand, for its part of the parties' agreement, Plaintiff provided $13,000.00 to YS Cha for his compensation and expenses every month from November 2016 to January 2018 – at first into Defendant Stafford Cha's Chase account, and then into Anyclo USA, Inc.'s Bank of America account.  <u>See</u> Plaintiff's Trial Exhibits P-5 & P-6 & P-7 & P-12 & P-13.

19.     Also under the parties' agreement for Anyclo USA, Inc.: (1) YS Cha sold orders for Plaintiff's goods to American buyers; (2) Plaintiff fulfilled those orders by shipping goods directly to the American buyers from Asia; (3) the buyers paid Anyclo USA, Inc.'s bank account; and (4) YS Cha was to wire the sales proceeds from Anyclo USA, Inc.'s American bank account to Plaintiff's South Korean bank account.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see also</u> Trial Testimony of Dong Geun Song; <u>see also</u> Trial Testimony of Yang-Sup Cha.

20.     The agreement of the parties as to the remittance of third-party buyer funds from YS Cha and Anyclo USA, Inc. to Plaintiff is evidenced by the fact that, from December 1, 2016 to August 31, 2017, Anyclo USA, Inc. received payments totaling $579,310.08 from third-party buyers.  See Plaintiff's Trial Exhibits P-7 (Pages 19 & 27 & 35) & P-13.

21.     Then, between December 1, 2016 and August 31, 2017, YS Cha transmitted $571,336.83 in third-party buyer funds to Plaintiff from Anyclo USA, Inc.'s bank account.  See Plaintiff's Trial Exhibits P-7 (Pages 23 & 27 & 35) & P-13.

22.     Beginning in September 2017, YS Cha breached the parties' agreement by delaying and reducing transmissions of third-party buyer funds to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Pages 41-127) & P-13.

23.     From December 16, 2017 to date, YS Cha has breached the parties' agreement by failing and refusing to transmit any third-party buyer funds to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Pages 55-127) & P-13.

24.     As such, YS Cha breached the parties' agreement by failing and refusing to remit $415,939.78 in third-party buyer funds to Plaintiff between August 21, 2017 and December 19, 2018. See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Cris Lee.

25.     As a direct and proximate result of YS Cha's breaches of the parties' agreement as to the transmission of third-party buyer funds to Plaintiff from Anyclo USA, Inc., Plaintiff has suffered damages in the amount of $415,939.78.

26.     Plaintiff is entitled to receive the entirety of the $176,712.35 deposited into court, and Plaintiff is entitled to a judgment against YS Cha in the amount of $239,227.43.

**C. Conversion.**

27.     The common law tort of conversion is defined as the " 'intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' " See <u>Chicago Title Ins. Co. v. Ellis</u>, 978 A.2d 281 (N.J.A.D. 2009) (quoting <u>Restatement (Second) of Torts</u> § 222A(1) (1965)), certif. denied, 983 A.2d 1113 (N.J. 2009).

28.     The common law tort of conversion has evolved to apply to "money, bonds, promissory notes, and other types of securities, as long as the plaintiff has an actual interest in the security and it is capable of misuse in a way that would deprive the plaintiff of its benefit."  See <u>Cargill Global Trading v. Applied Dev. Co.</u>, 706 F.Supp.2d 563, 578 (D.N.J. 2010).

29.     In addition, the funds must be identifiable and the injured party must establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner. See <u>Chicago Title</u>, *supra*, 978 A.2d 281; <u>see also</u> <u>Mueller v. Technical Devices Corp.</u>, 84 A.2d 620 (N.J. 1951).

30.     The repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought.  <u>Id.</u>

31.     In this case, YS Cha was the only authorized signatory on Anyclo USA, Inc.'s Bank of America account.  <u>See</u> Plaintiff's Trial Exhibit P-7; <u>see also</u> Trial Testimony of Yang-Sup Cha.

32.     As the sole signatory, YS Cha was supposed to transmit third-party buyer funds Plaintiff in South Korea in payment for the goods that had been delivered by Plaintiff to Anyclo USA, Inc.'s American third-party buyers.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see also</u> Trial Testimony of Dong Geun Song; <u>see also</u> Trial Testimony of Yang-Sup Cha.

33.     Beginning in September 2017, YS Cha started delaying transmissions of third-party buyer funds to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Pages 41-127) & P-13.

34.     On September 12, 2017, a third-party buyer (Moret) deposited $181,942.26 into Anyclo USA, Inc.'s bank account for goods delivered directly to the buyer by Plaintiff, but YS Cha transmitted to Plaintiff only $45,793.00 on September 19, 2017, and only another $34,659.00 on October 16, 2017, and then only $48,439.50 on November 8, 2017 (totaling just $128,891.50). See Plaintiff's Trial Exhibits P-7 (Pages 41 & 45 & 49) & P-13.

35.     On December 8, 2017 and December 15, 2017, a third-party buyer (R.P.R.) paid $119,697.68 into Anyclo USA, Inc.'s bank account in two (2) deposits of $59,848.84 each, but YS Cha wired only $46,250.88 from Anyclo USA, Inc. to Plaintiff on December 15, 2017.  See Plaintiff's Trial Exhibits P-7 (Page 49) & P-13; see also Trial Testimony of Cris Lee.

36.     After Plaintiff's receipt of that wire payment of $46,250.88 on December 15, 2017, YS Cha completely stopped forwarding any third-party buyer funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 & P-13; see also Trial Testimony of Cris Lee.

37.     On January 12, 2018, third-party buyer (Moret) paid $97,790.54 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

38.     On January 16, 2018, a third-party buyer (R.P.R.) paid $35,226.00 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

39.     On January 19, 2018, third-party buyer (R.P.R.) paid another $35,226.00 into Anyclo USA, Inc.'s bank account, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 59) & P-13.

40.     By e-mail dated February 1, 2018, Plaintiff questioned YS Cha as to the payments received by Anyclo USA, Inc. from third-party buyer R.P.R. in December 2017 and January 2018, but which funds were not forwarded from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibit P-10 (Page 1); see also Trial Testimony of Dong Geun Song.

41.     At the time, Plaintiff had already checked with third-party buyer R.P.R., and knew the payments had been received by Anyclo USA, Inc.  See Trial Testimony of Dong Geun Song.

42.     By e-mail dated February 1, 2018, YS Cha lied to Plaintiff, stating "The payment has been scheduled for the end of February," when such payments had already been received by Anyclo USA, Inc. from third-party buyer R.P.R. in December 2017 and January 2018.  See Plaintiff's Trial Exhibits P-10 (Page 1) & P-7 (Page 49 & 59) & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Cris Lee.

43.     On February 8, 2018, third-party buyer (Moret) paid $254,671.78 into Anyclo USA, Inc.'s account for goods delivered by Plaintiff, but YS Cha did not transmit any of the funds from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13.

44.     By e-mail dated February 12, 2018, Plaintiff questioned YS Cha as to the payments received by Anyclo USA, Inc. from third-party buyer Moret in January and February 2018, but which funds were not forwarded from Anyclo USA, Inc. to Plaintiff.  See Plaintiff's Trial Exhibit P-10 (Page 3); see also Trial Testimony of Dong Geun Song.

45.     Again, Plaintiff had already checked with third-party buyer Moret, and knew the payments had been received by Anyclo USA, Inc.  See Trial Testimony of Cris Lee.

46.     By e-mail dated February 12, 2018, YS Cha again lied to Plaintiff, stating "I will request confirmation and inform you."  See Plaintiff's Trial Exhibits P-10 (Page 5) & P-7 (Page 49 & 59) & P-13; see also Trial Testimony of Cris Lee.

47.     By e-mail dated February 23, 2018, Plaintiff demanded that YS Cha forward the $568,653.32 in third-party buyer funds due to Plaintiff but being held by YS Cha in Anyclo USA, Inc.'s Bank of America account.  See Plaintiff's Trial Exhibit P-10 (Pages 9 & 10); see also Trial Testimony of Dong Geun Song.

48.     On March 19, 2018, Mr. Song met with YS Cha to demand the return of Plaintiff's third-party buyer funds, but YS Cha only agreed to transmit $250,000.00 from Anyclo USA, Inc. to Plaintiff as a "sign of good faith."  See Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

49.     On March 20, 2018, YS Cha transmitted the $250,000.00 from Anyclo USA, Inc.'s account to Plaintiff's South Korean bank account – demonstrating YS Cha's clear knowledge that he was wrongfully exercising dominion and control over Plaintiff's monies.  See Plaintiff's Trial Exhibits P-7 (Page 69) & P-13; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

50.     Moreover, from February 22, 2018 to December 3, 2018, YS Cha converted another $141,545.85 in checks from Anyclo USA, Inc.'s account payable to his wife, NH Kim.  See Plaintiff Trial Exhibits P-7 (Pages 65 & 69 & 115) & P-13.

51.     Following YS Cha's payment of $250,000.00 to Plaintiff on March 20, 2018, Anyclo USA, Inc.'s account should have contained $318,653.32 in third-party buyer funds for the benefit of Plaintiff, but the overall balance of the account was just $155,759.31.  See Plaintiff's Trial Exhibits P-7 (Page 65) & P-13; see also Trial Testimony of Cris Lee.

52.     On April 9, 2018, Plaintiff filed the instant litigation against Defendants seeking recovery of the third-party buyer funds held by YS Cha in Anyclo USA, Inc.'s bank account.  See Complaint [Document #1].

53. On August 2, 2018, despite the end of Plaintiff and YS Cha's relationship, a third-party buyer (Moret) used on-file wire information and mistakenly paid $97,286.46 into Anyclo USA, Inc.'s Bank of America account.  <u>See</u> Plaintiff Trial Exhibits P-7 (Page 97) & P-13.

54. The mistaken $97,286.46 payment by Moret into Anyclo USA, Inc.'s bank account increased the amount of third-buyer funds possessed or converted by YS Cha from $318,653.32 to $415,939.78.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see also</u> Trial Testimony of Cris Lee.

55. YS Cha did not respond or acknowledge the mistaken $97,286.46 payment and continued converting all funds in Anyclo USA, Inc.'s bank account for the use of his wife, NH Kim, and himself.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see also</u> Trial Testimony of Cris Lee.

56. By Court Order dated December 4, 2018, Defendants were required to pay all funds in Anyclo USA, Inc.'s bank account into the Court's trust fund.  <u>See</u> Plaintiff's Trial Exhibit P-11.

57. On December 19, 2018, Defendants paid all remaining funds, totaling $176,712.35, into the Court's trust fund.  <u>See</u> Plaintiff's Trial Exhibits P-7 (Pages 123 & 175) & P-13.

58. Given the payment of funds into court by Defendants, clearly Plaintiff's third-party funds were readily identifiable and segregated in Anyclo USA, Inc.'s bank account.  <u>See</u> <u>Chicago Title</u>, <u>supra</u>, 978 A.2d 281; <u>see also</u> <u>Mueller v. Technical Devices Corp.</u>, 84 A.2d 620 (N.J. 1951).

59. At the time of Defendants' payment into court, Anyclo USA, Inc.'s account should have contained $415,939.78 in third-party buyer funds, but the balance was just $176,712.35.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13; <u>see also</u> Trial Testimony of Cris Lee.

60. On January 4, 2019, Anyclo USA, Inc.'s account received a deposit in the amount of $3,367.22 as the return of office security deposit.  <u>See</u> Plaintiff's Trial Exhibits P-7 (Page 127).

61. Defendants did not inform Plaintiff of the security deposit return, and thereafter, withdrew all of the funds from the account in cash.  <u>See</u> Plaintiff's Trial Exhibits P-7 & P-13.

62.     As a direct and proximate result of YS Cha's intentional exercise of wrongful dominion or control over Plaintiff's third-party buyer funds in Anyclo USA, Inc.'s bank account, and YS Cha's also converting Plaintiff's security deposit, Plaintiff has suffered damages in the amount of $419,307.00.

63.     Plaintiff is entitled to receive the entirety of the $176,712.35 deposited into court, and Plaintiff is entitled to judgment against YS Cha in the amount of $242,594.65.

64.     Plaintiff is also entitled to judgment against NH Kim in the amount of $141,545.85 insofar as NH Kim received from YS Cha and likewise converted $141,545.85 in checks from Anyclo USA, Inc.'s account from February 22, 2018 to December 3, 2018.  See Plaintiff Trial Exhibits P-7 (Pages 65 & 69 & 115) & P-13.

65.     Indeed, in less than a month, from February 22, 2018 to March 20, 2018, NH Kim received payments via check from YS Cha written from Anyclo USA, Inc.'s account in the total amount of $120,545.85, under such circumstances that no reasonable person would believe said payments were legitimate or in the ordinary course of business.  See Plaintiff Trial Exhibits P-7 (Pages 65 & 69 & 115) & P-13.

66.     Plaintiff is entitled to judgment against YS Cha in the amount of $242,594.65, of which, NH Kim should likewise be held jointly and severally liable in the amount of $141,545.85.

**D. Fraud.**

67.     To establish fraud, a plaintiff must prove the following five elements by clear and convincing evidence: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

68.     In this case, at the outset, by e-mail dated October 19, 2016, YS Cha falsely represented to Plaintiff that the costs of creating Anyclo USA, Inc. were $10,726.00.   See Plaintiff's Trial Exhibit P-1 (Page 9).

69.     Relying upon YS Cha's misrepresentations as to the costs of creating Anyclo USA, Inc., on November 2, 2016, Plaintiff wired $10,000.00 to the Chase Bank account of Defendant Stafford Cha at the behest of YS Cha.  See Plaintiff's Trial Exhibits P-6 (Page 13) & P-12.

70.     YS Cha actually paid only $500.00 to Daniel Cho, CPA to incorporate Anyclo USA, Inc., inclusive of all fees.  See Plaintiff's Trial Exhibit P-19 (Page 22: Lines 3-24).

71.     As a direct and proximate result of YS Cha's knowing and material misrepresentation as to the inflated costs of incorporating Anyclo USA, Inc., upon which Plaintiff relied in paying $10,000.00 to YS Cha, Plaintiff has suffered damages of $9,500.00 as the difference between the actual costs of incorporation and the misrepresentations of YS Cha.  See Plaintiff's Trial Exhibit P-14; see also Trial Testimony of Cris Lee.

72.     During the fourteen months of Anyclo USA, Inc.'s operation, from November 2016 to January 2018, YS Cha also provided false accountings to Plaintiff to justify his $13,000.00 in monthly compensation and expense payments.  See Plaintiff's Trial Exhibit P-5.

73.     On his fraudulent monthly accountings to Plaintiff, YS Cha claimed that Anyclo USA, Inc. was paying $2,558.57 in monthly office license fees and expenses in New York City, based upon a License Agreement that YS Cha had originally provided to Plaintiff in late 2016 during the parties' negotiations.  See Plaintiff's Trial Exhibits P-2 & P-5; see also Trial Testimony of Dong Geun Song; see also Trial Testimony of Yang-Sup Cha.

74.     Subsequent investigation by Plaintiff found the true and correct November 2016 License Agreement, from which the first two pages were altered by YS Cha to indicate an increased rent from $1,800.00 to $2,100.00, plus also-inflated expenses, all payable to Mojomoto, LLC – a company owned by his wife, NH Kim.  See Plaintiff's Trial Exhibits P-2 & P-3; see also Trial Testimony of Yang-Sup Cha; see also Trial Testimony of Nam-Hee Kim.

75.     As a direct and proximate result of YS Cha's knowing and material misrepresentation of the monthly cost of the License Agreement, upon which Plaintiff relied in making monthly payments to YS Cha, Plaintiff has suffered damages of $300.00 per month for the fourteen months of Anyclo USA, Inc.'s operation, for a total of $4,200.00.  See Plaintiff's Trial Exhibit P-14; see also Trial Testimony of Cris Lee.

76.     During trial testimony, YS Cha admitted that Anyclo USA, Inc. did not pay any of the $250.00 monthly accounting fees listed on his fraudulent monthly accountings provided to Plaintiff, and Daniel Cho, CPA confirmed that he never received any payments from YS Cha.  See Plaintiff's Trial Exhibit P-5; see also Trial Testimony of Yang-Sup Cha; see also Plaintiff's Trial Exhibit P-19 – Deposition of Daniel Cho, CPA (Page 27: Line 20 to Page 28: Line 13).

77.     As a direct and proximate result of YS Cha's knowing and material misrepresentation that Anyclo USA, Inc. was incurring accounting expenses, upon which Plaintiff relied in making monthly payments to YS Cha, Plaintiff has suffered damages of $250.00 per month for the fourteen months of Anyclo USA, Inc.'s operation, for a total of $3,500.00.  See Plaintiff's Trial Exhibit P-14; see also Trial Testimony of Cris Lee.

78.     During trial testimony, YS Cha also admitted that Anyclo USA, Inc. never paid $214.20 in workers' compensation insurance because Anyclo USA, Inc. had no actual employees. See Plaintiff's Trial Exhibit P-5; see also Trial Testimony of Yang-Sup Cha.

79.     As a direct and proximate result of YS Cha's knowing and material misrepresentation that Anyclo USA, Inc. was incurring workers' compensation expenses, upon which Plaintiff relied in making monthly payments to YS Cha, Plaintiff has suffered actual damages of $214.20 per month for the fourteen months of Anyclo USA, Inc.'s operation, for a total of $2,998.80.  See Plaintiff's Trial Exhibit P-14; see also Trial Testimony of Cris Lee.

80.     Plaintiff has proven by clear and convincing evidence that, as a result of YS Cha's knowing and material misrepresentations as to Anyclo USA, Inc.'s monthly expenses, upon which Plaintiff relied in making such payments for fourteen months, Plaintiff has suffered damages in the amount of $20,198.80, comprised of: (1) $9,500.00 in false one-time incorporation expenses; (2) $3,500.00 for $250.00 in false accounting expenses for 14 months; (3) $2,998.20 for $214.20 in false workers' compensation expenses for 14 months; and (4) $4,200.00 for $300.00 in inflated office license fees for 14 months.

81.     Plaintiff is entitled to judgment against YS Cha in the amount of $20,198.80.

## CONCLUSION

For all of the foregoing reasons, in connection with all causes of action proven, Plaintiff Anyclo International, Inc. is entitled to immediate receipt of the $176,712.35 deposited into court, plus a judgment in the amount of $262,793.45 against Defendant Yang-Sup Cha, for which, Defendant Nam-Hee Kim should be held jointly and severally liable in the amount of $141,545.85.

**SOBEL HAN & CANNON, LLP**
Attorneys for Plaintiff
  Anyclo International, Inc.


By: */s/Gregory J. Cannon – NJID#038042007*
DATED: August 15, 2023                Gregory J. Cannon