Sukjin Henry Cho, Esq.
2160 North Central Road, Suite 305
Fort Lee, New Jersey 07024
Phone: 201-886-0200
sjhenrycho@gmail.com
*Attorney for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANYCLO INTERNATIONAL INC., a corporation<br><br>                                    Plaintiff,<br><br>        v.<br><br>YANG-SUP CHA, an individual,<br>NAM HEE KIM, an individual,<br>STAFFORD CHA, an individual,<br>ANYCLO USA INC., a corporation,<br>MOJO MOTO, LLC, a corporation,<br>JOHN DOES (1-20) and<br>ABC CORPORATIONS (1-10)<br><br>                                    Defendants. | Civil Action<br>No. 18-cv-05759-PGS-ZNQ<br><br><br>**Defendants' Proposed Findings of Fact<br>& Conclusions of Law** |

**Proposed Findings of Fact**

This matter came before the court for a bench trial, which was held on July 24 through 27, 2023. At the close of trial, the court Ordered the parties to submit proposed findings of fact and conclusions of law, and the defendants hereby submit the proposed findings of fact and conclusions of law.

**A. Introduction**

1. Plaintiff Anyclo International located in Seoul Korea is a textile manufacturer with its own factory in Indonesia and use sub-factory in Vietnam and provide finished goods to clothing importers in the United States. See Defendant Trial Exhibits D-39 (page 2)

2. Plaintiff Dong-Geun Song ("Song"), a/k/a Hopkins, is President and owner of Anyclo International located in Seoul, Korea.

3. In addition to the Yang-sup Cha ("Cha") and Nam-Hee Kim ("Kim") as the principal defendants, plaintiff added the Defendant Stafford Cha ("Stafford") who was 21 years old being a college student at the time of 2016.

4. Defendant YS Cha had worked only within the garment industry from 1995, and Cha spent a lot of time traveling and developing, and meeting the buyers the entire United States and built a good relationship and reputation with buyers.   Due to the Plaintiff and Song's unethical, slanderous emails which has caused a loss of trust and reputation that never will be regained. See Defendant Trial Exhibit D-22.   See also Defendant Trial Exhibits D-27.

**B.  The Parties First Meeting in South Korea and E-Mail Negotiation of Agreement.**

5. Mi-Logix introduced Defendant YS Cha several companies in Korea in 2016 including Plaintiff. Anyclo International located in Seoul Korea was one of the listed companies who were seeking a good agent in the US.

6. On September 26, 2016, Plaintiff Song and Defendant YS Cha met for the first time at Plaintiff's headquarters in Seoul Korea to discuss Plaintiff Anyclo International's marketing its goods in the entire USA/North America. Defendant YS Cha had many contacts with many US companies including Canadian Company.   See Defendant Trial Exhibits D-26 (Page 5, 9, 13, 15)

7. In September and October 2016 Plaintiff Song and Jino Choi a Director of plaintiff and Defendant YS Cha during the meetings, discussed payment of compensation, expenses, and incentives all includes as lump sum at US $15,000 for monthly operation of Anyclo International's incorporation of Anyclo USA in New York, USA.   It was not planned for YS Cha's incorporation of Anyclo USA.

8. The amount of $10,726.00 was estimated office cost based off 112 W.34th street New York, NY 10120 location which was different location of Anyclo USA office and was confirmed later at 1441 Broadway New York City 10018.

9. Due to Plaintiff's late response, the initial suggested location (112 W.34th Street NY, NY 10120) was taken by others. Then the Plaintiff Anyclo International's employee was instructed to send operation cost to Defendant's personal bank account.   See. Defendant Trial Exhibits D-8 (E-mail dated Oct.14.2016 Plaintiff's employee Jino Choi informed that branch establishment cost will be wired to Defendant's personal bank account by end of October)

10. Defendant YS Cha paid $1,300.00 on December 7, 2016 to Daniel Cho, CPA and additionally paid $600.00 on December 26, 2016 to Daniel Cho, CPA which includes for all initial set up cost.

11. On October 14, 2016, Plaintiff Anyclo International's General Manager Jino Choi instructed the money to be sent to Defendant's personal bank account for initial set up cost. At that time Defendant Anyclo USA was not established and its bank account did not opened and due to Cha's personal issues with bank accounts, the money was received on November 2, 2016 by Defendant Stafford's personal bank account. Defendant Anyclo USA's registration completed with the State of New York Department on December 29, 2016, and received the EIN# from IRS.   See Defendant Trial Exhibits D-2.   See also Defendant Trial Exhibits D-3.   See also Defendant Trial Exhibits D-8 (initial set up cost will be sent to Defendant's personal account)

12. The amount of $13,000 includes Anyclo USA monthly operation cost as Plaintiff agreed for 2 years agreement with an additional incentive. See Defendant Trial Exhibits D-6. See also Defendant Cha's Trial Testimony.

13. Defendant Anyclo USA operation monthly cost $13,000 was agreed confirmed December, 2016.   See also Plaintiff Song's Trial testimony and Defendant Cha's Trial Testimony.

14. By e-mail dated November 30, 2016. Plaintiff's General Manager Jino Choi sent an email to Defendant YS Cha, stating regards → Incentive:   20% of operation profit + Sales volume of incentive.     See Plaintiff's Trial Exhibit P-1 (page 27), and See Defendant Cha's Trial Testimony.

15. Additional incentive of sales volume as follow.
- Over $ 5 million → US $10,000
- Over $ 6 million → US $15,000
- Over $ 7 million → US $20,000
- Over $ 8 million → US $25,000
  See Plaintiff's Trial Exhibit P-1 (page 27), and See Defendant Cha's Trial Testimony.

16. By e-mail dated December 4, 2016, Defendant YS Cha responded that the proposal was "a bit less than the incentive that I have been received (Not agreed) so far." "But I will follow the company decision for first two (2) years contract as a priority respectful for the company's growth." This was to clarify a minimum two (2) years contract, and the incentive commission of 2 % was agreed verbally. See Defendant Cha's Trial Testimony.

17. The first Purchase Order was received from third party buyer named RPR on December 15, 2016. Then Plaintiff Song approved to increase transportation allowance $1,000 on December 27, 2016. See Defendant Trial Exhibits D-16

18. Plaintiff Anyclo International confirmed to pay $13,000 for monthly operation cost and 2 years of agreement with incentive. See Defendant Trial Exhibits D-6.   See Defendant Trial Exhibits D-16 (First Purchase Order).   See also Defendant Trial Exhibits D-9

## C.  Operation of Anyclo USA Inc. and YS Cha's Misrepresentation as to Expenses.

19. The Plaintiff Song is a foreigner without a social security number in the United States, and Song could not open a bank account in the US, so the Defendant YS Cha had no choice became authorized signatory of Anyclo USA bank account.

20. Under the Plaintiff Song's guidance for the operation of Defendant Anyclo USA, (1) Defendant Anyclo USA received the orders from third-party buyers; (2) Plaintiff Anyclo International fulfilled those orders by shipping goods to the American buyers from Asia; (3) the third-parties buyers pay Defendant Anyclo USA's bank account; and (4) Defendant Anyclo USA wire to Plaintiff Anyclo International's bank account. See Defendant Trial D-18 See Defendant Cha's Trial Testimony.

21. Plaintiff Song agreed to pay $13,000 in each month for Defendant Anyclo USA's 2 years of operation cost plus commission, but Plaintiff Song deceived and breached the agreement purposely fail to pay the Defendant Cha and Anyclo USA monthly operation cost plus incentive starting from August 2017 without any prior notice or proper explanation. See Defendant Trial Exhibits D-6 (E-mail wrote by Song, Dong Geun's 2 years of agreement). See Defendant Cha's Trial Testimony.

22. In October 14, 2016 Plaintiff Anyclo International (located in Seoul Korea) General Manager Jino Choi asked Defendant YS Cha to breakdown detail of monthly operation cost for reporting in Korea. Defendant YS Cha cooperated with what Plaintiff asked for. This amount was never complained about by Plaintiff Song until this action was filed.   See Defendant Trial Exhibits D-8 See Defendant Cha's Trial Testimony.

23. Defendant Anyclo USA monthly office license agreement was signed under personal guarantee of Defendant YS Cha who signed as Guarantor from Nov 2, 2016 to Oct, 31, 2018. This license amount did not matter to the parties because the parties agreed to a lump sum of $13,000 per month. Cha had to pay whatever was necessary for the company's expenses, then take the balance as his income.   See Defendant Trial Exhibits D-6. See Defendant Cha's Trial Testimony.

24. Defendant Anyclo USA company filed (File number: 161129010479; DOS ID: 5044933) with NYS Department of State on November 29, 2016.   At that time Anyclo USA company bank account was not opened to pay. See Defendant Trial

Exhibits D-1. <u>See</u> Defendant Trial Exhibits D-2. <u>See</u> also Defendant Trial Exhibits D-3. See Defendant Cha's Trial Testimony.

25. The License Agreement is signed with Defendant YS Cha's 100% personal guarantee as guarantor (NOT Mr. SONG) from November 2016 to October 2018. This license amount did not matter to the parties because the parties agreed to a lump sum of $13,000 per month. Cha had to pay whatever was necessary for the company's expenses, then take the balance as his income.   See Defendant Cha's Trial Testimony.

26. In accordance with Plaintiff Anyclo International's 2 years of agreement, Defendant YS Cha managed Anyclo USA with $13,000 operation monthly cost as the Plaintiff Anyclo International's (located in Seoul Korea) NY subsidiary office. This amount did not matter to the parties because the parties agreed to a lump sum of $13,000 per month. Cha had to pay whatever was necessary for the company's expenses, then take the balance as his income.   See Defendant Cha's Trial Testimony.

27. As per Plaintiff Song's request for Korean reporting, Defendant YS Cha was only helping by dividing the lump sum $13,000 for monthly operation cost as requested by Plaintiff. Defendant YS Cha's duty, role and responsibility was to keep the operation well with the lump sum $13,000 for monthly operation cost for Anyclo USA as Plaintiff Song agreed.   This amount did not matter to the parties because the parties agreed to a lump sum of $13,000 per month. Cha had to pay whatever was necessary for the company's expenses, then take the balance as his income.   <u>See</u> also Defendant Trial Exhibits D-8 (e-mail dated Oct, 14, 2016) See Defendant Cha's Trial Testimony.

28. In trust and relying on Plaintiff Song's agreement, Defendant YS Cha received the money into his son's personal bank account initially.   <u>See</u> Defendant Trial Exhibits D-8 (By email dated Oct, 14, 2016) See Defendant Cha's Trial Testimony.

**D. Defendant' Conversion of Third-Party Buyer Funds from Anyclo USA's Account**

29. Every dollar and cent amount that received from third-party buyers was always deposited into the Defendant Anyclo USA's bank account, and after deducting the incentive commission of 1.5%, the balance amount was remitted to Plaintiff Anyclo International's bank account in accordance with the guidance by Song. See Defendant Cha's Trial Testimony.

30. Defendant paid all the money received immediately until Plaintiff Song breached the agreement and failing to pay the amount agreed on time. Then Defendant YS Cha paid most of the money received but did not want to pay some amount immediately to

reserve some money to maintain Anyclo USA for safety. See Defendant Cha's Trial Testimony.

31. Cha Received from third-party buyer (RPR) $203,524.40 on April 27, 2017.   The Cha received from third-party buyer (Moret) $55,440.00 on June 8, 2018.   Also, received from third-party buyer (Moret) $320,345.68 on August 15, 2017, totaling $579,310.08 from December 2016 60 August 2017.   See Defendant Trial Exhibits D-29. See also Defendant Trial Exhibits D-31 See Defendant Cha's Trial Testimony.

32. As per Plaintiff Song's instruction to drop 1.5 % ($0.10 per piece) into the Defendant Anyclo USA bank account, Defendant Anyclo USA wired to Plaintiff Song, $200,900.20 on May 2, 2017, $54,555.00 on June 26, 2017, $315,881.63 on August 21, 2017.   Total $571,336.83. See Defendant Trial Exhibits D-29. See also Defendant Trial Exhibits D-31. See Defendant Cha's Trial Testimony.

33. As of August 21, 2017, Anyclo USA bank daily ledger balances was $7,800.21 because wire transfer fee + bank service fees + Amazon Seller Permit fee $119.97 by Plaintiff Anyclo International located in Seoul Korea's request + USPS sample shipping cost by Plaintiff Anyclo International located in Seoul Korea's request included.   See Defendant Trial Exhibits D-29 (Column #4 -PAID). See also Defendant Trial Exhibits D-31 (August 2017 bank statement) See Defendant Cha's Trial Testimony.

34. Despite the Defendant Anyclo USA YS Cha's efforts to fulfill the operation as per agreement, Plaintiff Song only wired US $10,000 absurdly without any prior notice or proper explanation and from August 2017. See Trial Exhibits D-31 (August 2017 bank statement). See also Defendant Trial Exhibits D-29 (Column #1 Received from Anyclo International) See Defendant Cha's Trial Testimony.

35. Plaintiff failed to pay the monthly amount on full thereby breaching the agreement. See Trial Exhibits D-31 (August 2017 bank statement). See also Defendant Trial Exhibits D-29 (Column #1 Received from Anyclo International) See Defendant Cha's Trial Testimony.

36. At the time the Defendant Anyclo USA's bank account balance was insufficient and monthly operation cost were only able to use $7,000.00, the Plaintiff Song of Anyclo International created an issue then unilaterally broke the agreement of $13,000 for monthly operation cost.   See Defendant Trial Exhibits D-31 (August 2017 bank statement) See Defendant Cha's Trial Testimony.

37. Since September 2017 Cha agent wanted to protect and cover the monthly operation cost funds of Defendant Anyclo USA. See Defendant Trial Exhibits D-31. (September 2017 Bank Statement) See Defendant Cha's Trial Testimony.

38. Again, on September 29, 2017 Plaintiff only wired $10,000 to Defendant Anyclo USA without any prior notice or proper cause of explanation. See Defendant Cha's Trial Testimony.

39. As of November 30, 2017 Anyclo USA's bank account balance was $52,656.30 (Not $61,024.01). Plaintiff Song, Dong-Geun Anyclo International's employee Cris Lee's false created amount $61,024.01 is not an accounting calculation that makes no sense at all and has no proof of evidence. A third-party buyer (Moret) deposited $181,942.26 into Anyclo USA's bank account for goods delivered directly to the buyer by Plaintiff, and Defendant Anyclo USA transmitted to Plaintiff Anyclo International located in Seoul Korea $45,793.00. On September 19, 2017, and another $34,659.00 on October 16, 2017, $48,439.50 on November 8, 2017, thus the balance of above is $53,050.76 (Not $54,776.17). The amount of $54,776.17 is the Plaintiff Anyclo International's employee Cris Lee's created false number that is not exist and has no proof of evidence.   Again, in November 2017 Plaintiff only wired $10,925.13 to Defendant not $13,000 as agreed. At that time, the Defendant Anyclo USA's bank ending balance was $52,656.30. The Defendant Anyclo USA company funds were always in the bank account, except for $13,000 of monthly operation cost. No money was moved except for the agreed $13,000 monthly operation cost to Cha.   The Defendant NH Kim had been working for Plaintiff Song's company Anyclo International since February 15, 2017, and went on a business trip and worked for Plaintiff Song's company Anyclo International for almost 13 months. Defendant NH Kim never received salary for her work which the Defendant NH 's salary claim was admitted as counterclaim of $74,800. See Defendant Trial Exhibits D-29 (Row #12). See Defendant Trial Exhibits D-31 (November bank statement).   See also Defendant Trial Exhibit D-33. See Defendant Cha's Trial Testimony.   See Defendant Kim's Trial Testimony.

40. As Defendant Cha feared, again the Plaintiff did not wire December, 2017 operation cost at all without prior notification or proper explanation. See Defendant Trial Exhibits D-29 (Column #1/received from Anyclo International /December, 2017) See also Defendant Trial Exhibits D-6 (wrote by Plaintiff Song, Dong-Geun 2 years of agreement).   See Defendant Cha's Trial Testimony.

41. The Plaintiff did not send at all for December 2017 monthly operation cost without any prior notice or reasonable explanation. But the Defendant Anyclo USA still wired $46,250.88 to Plaintiff Anyclo International Seoul Korea bank account on December

15, 2017. <u>See</u> Defendant Trial Exhibits D-29 (Column #3 Wired to Plaintiff Anyclo International in December 15, 2017) See Defendant Cha's Trial Testimony.

42. The amount of $97,790.54 received on January 12, 2018, from third-party buyer "Moret" was in the Anyclo USA bank account. <u>See</u> Defendant Trial Exhibits D-31 (Jan, 2018 bank statement) See Defendant Cha's Trial Testimony.

43. The amount of $35,226.00 received on January 16, 2018, from third-party buyer "Reflex Performance Resource" was in the Anyclo USA bank account. <u>See</u> Defendant Trial Exhibits D-31 (January 2018 bank statement) See Defendant Cha's Trial Testimony.

44.  The amount of $35,226.00 received on January 19, 2018) from third-party buyer "Reflex Performance Resource" was in the Anyclo USA bank account. <u>See</u> Defendant Trial Exhibits D-31 (January 2018 bank statement) See Defendant Cha's Trial Testimony.

45. The amount of $302,713.35 as of January 31, 2019, is not proper accounting calculation that makes no sense at all that the Plaintiff Anyclo International's employee Cris Lee created false amount that is not exist and has no proof of evidence.

46. As of January 31, 2018 Defendant Anyclo USA's bank account ending balance was $270,919.09. (Not $302,713.35).   At that time, Defendant NH Kim was already working for the Plaintiff Anyclo International, from February 15, 2017 and had a traveled to meet with buyers. By e-mail dated October 17, 2017 Plaintiff Song sent message of hard work about the results of good work to NH Kim and also same day the buyer Moret's President Mr. Debease sent message of appreciation to NH Kim but the Plaintiff Song never mentioned how he would pay of NH Kim's work. Plaintiff Song did not pay $74,800.00 of 13 months NH Kim's work and Plaintiff Anyclo International unilaterally disconnect by cut off the company email address on February 26, 2018.   <u>See</u> Defendant Trial Exhibits D-33. <u>See</u> also Defendant Trial Exhibits D-31 (January 2018 bank statement). <u>See</u> also Defendant Trial Exhibits D-29 (Row #12 NH Kim's work duration). See Defendant Trial Exhibits D-24, D-25. See Defendant Cha's Trial Testimony.   See Defendant Kim's Trial Testimony.

47. In the beginning of 2018, the Plaintiff Song began to exclusion of Defendant Cha and Kim deliberately, and instructed his employees to continuously increasing the intensity, and from January 2018, Plaintiff Song requesting the buyers change of Purchase orders and change of Agent name. These requests to third-parties buyers were a scheme to steal Defendant Cha's customers. However, as a Plaintiff Song's agent Defendant YS Cha always tried to keep the two-years agreement.   <u>See</u> Defendant Trial Exhibits D-18. See Defendant Cha's Trial Testimony.

48. The money received from third-parties buyers was always in the Defendant Anyclo USA's bank account. <u>See</u> Defendant Trial Exhibits D-31 (January 2018 bank statement) See Defendant Cha's Trial Testimony.

49. The amount $59,848.84 of December 8, 2017, and the amount $59,848.84 of December 15, 2017 and the amount $35,226.00 of January 16, 2018 and the amount $35,226.00 of January 19, 2018 were received from third-party buyer (RPR) which was reserved in the Defendant Anyclo USA's bank account. <u>See</u> Defendant Trial Exhibits D-31 (December 2017 and January, 2018) See Defendant Cha's Trial Testimony.

50. On February 8, 2018, a third-party buyer (Moret) paid $254,671.78 into Anyclo USA bank account and the money was in the bank account. <u>See</u> Defendant Trial Exhibits its D-31 (February 2018 Bank statement) See Defendant Cha's Trial Testimony.

51. By e-mail dated February 12, 2018, Plaintiff Anyclo International's employee Cris Lee asked Defendant YS Cha to check with third party buyer (Moret) regarding shipment of December & January, 2018 payment schedule. But later Defendant YS Cha found that Plaintiff Song separately instructed his employee Jongin Lee to contact third party buyer (Moret) several times directly to request change of entire record of Purchase Order to Plaintiff Anyclo International from Defendant Anyclo USA.   <u>See</u> Defendant Trial Exhibits D-18.    See Defendant Cha's Trial Testimony.

52. At this time Cha felt that he was betrayed by Plaintiff Song. On February 12, 2017, Defendant YS Cha replied to Plaintiff Anyclo International's employee Cris Lee, "I will check with the buyer and let you know" But absurdly Defendant Anyclo USA received the next day of e-mail from third-party buyer Moret's Vice President, Plaintiff Song requested to visit Moret with purposefully omitting Defendant Cha and Kim from e-mail communication. Plaintiff Song was blatantly cheating Defendant Anyclo USA. <u>See</u> Defendant Trial Exhibits D-17 (page 1,2) See Defendant Cha's Trial Testimony.

53. As of February 22, 2018, Defendant Anyclo USA bank account daily ledger balance was$523,859.056 (Not $568,653.32).   Plaintiff Anyclo International's employee Cris Lee created $568,653.32 false number that is not considered amount that Defendant Anyclo USA paid to IRS $4,930.00, NYS Department of City $2,739.00, New York City Department of Finance $2,140.00. <u>See</u> Defendant Trial Exhibits D-29 (Column #4 Paid).   <u>See</u> Defendant Trial Exhibits D-31 (January 2018 bank statement).   <u>See</u> Defendant Trial Exhibits D-31 (February 2018 Daily ledger balance) See Defendant Cha's Trial Testimony.

54. The amount of $568,653.32 alleged by Plaintiff on February 23, 2018 is a false number that is not exist and has no proof of evidence. On February 23, 2018, Plaintiff

Song filed a lawsuit against Defendant in the amount of $547,472.08. Plaintiff misstated with false numbers repeatedly.   <u>See</u> Defendant Trial Exhibits D-13.   See Defendant Cha's Trial Testimony.

55. On February 23, 2018, Plaintiff Song filed lawsuit against Defendant cha, Kim, and Anyclo USA in the amount of $547,472.08.   Notably, Plaintiff Song repeatedly used false numbers that has no proof of evidence.   On the same day February 23, 2018 Plaintiff Song sent a blasphemy email about the Defendant YS Cha and NH Kim to the third-party buyer Moret's Vice President including Moret's production team. As a result of that Defendants Cha and NH Kim damaged surmounted defamation and countless financial loss until now which cannot be fully recovered.   <u>See</u> Defendant Trial Exhibit D-29 (Row #16 Total damage incurred due to Plaintiff Song, Dong-Geun Anyclo International's lawsuit) <u>See</u> also Defendant Trial Exhibits D-22 (Blasphemy email to third-party buyer Moret) See Defendant Cha's Trial Testimony. See Defendant Kim's Trial Testimony.

56. All US customs related issues were resolved as Plaintiff agree to pay damages. <u>See</u> Defendant Trial Exhibits D-34. See Defendant Cha's Trial Testimony.

57. While Plaintiff Song sent e-mail dated February 23, 2018, which was sent to third-party buyer Moret's Vice President and Moret's productions team, Cha wanted Hopkins to apologize.   <u>See</u> Trial Exhibits D-13.   <u>See</u> also Defendant Trial Exhibits D-22. See Defendant Cha's Trial Testimony.

58. On February, 24, 2018 Defendant Cha replied to Plaintiff Song "There are things that must be reinstated by him (Plaintiff Song, Dong-Geun) as he agreed & promised, I am disconnected from all the buyers that I was currently working with because Anyclo International has purposely planned a meeting schedule without of my knowledge, bringing critical damage to my reputation in this industry"   "Conducting this improper and unprofessional actions need to be fixed and explained with a proper apology as a business manner."   <u>See</u> Defendant Trial Exhibits D-30. See Defendant Cha's Trial Testimony.

59. Before sending an email on February 26, 1018, on February 23, 2018, Plaintiff Song, filed lawsuit against Defendant YS Cha and Kim and on same day sent a slanderous e-mails to third party buyer. Defendant YS Cha and Kim were damaged of his last 25 years of reputation that cannot be recovered. See Defendant Cha's Trial Testimony.

60. In March 2018 Plaintiff Song secretly traveled to the USA and he came without prior notice Defendant YS Cha and Kim's residence in New Jersey. He knocked on the door on a dark evening while defendant YS Cha was out of State for business travel

and only his wife Kim and daughter were at home. See Defendant Cha's Trial Testimony.

61. On March 19, 2018, Plaintiff Song and Defendant YS Cha met to restore the third-parties buyer's relationship by agreeing to send an apology e-mail and pay agreed monthly operation cost and incentive.   In good faith, Defendant Anyclo USA wired $250,000.00 to Plaintiff Song but Plaintiff Song never sent an apology e-mail to third-party buyers.   Again, Plaintiff Song deceived Defendant YS Cha dealing with Cha's buyers after the lawsuit.   See Defendant Trial Exhibits D-29 (Column#3 Wired to Plaintiff Anyclo International March 20, 2018). See Defendant Cha's Trial Testimony.

62. On March 20, 2018, Defendant YS Cha wired $250,000.00 to Plaintiff Song, but Defendant YS Cha and NH Kim only received another the instant action with complaint from Plaintiff Song's new lawyer on April 19, 2018. When Defendant YS Cha and NH Kim called Plaintiff Song but Song ignored the phone call.   See Defendant Cha's Trial Testimony.

63. After receiving the service of lawsuit on February 23, 2018, from Plaintiff Song, Defendant Anyclo USA paid a litigation fee and remain balance of 2 years agreement with incentive. See Defendant Trial Exhibits D-13. See Defendant Cha's Trial Testimony.

64. Again, Plaintiff Anyclo International's employee Cris Lee created a false number that nowhere cannot be found and has no proof of evidence. As of the date the lawsuit on February 23, 2018, Defendant Anyclo USA's bank ending balance $523,859.06. On March 20, 2018, Defendant Anyclo USA wired $250,000.00 to Plaintiff Song. See Defendant Cha's Trial Testimony.

65. On April 9, 2018, Defendant Anyclo USA, YS Cha & NH Kim received another new (2nd) lawsuit from different lawyer with unethically including Stafford that Plaintiff Song has never met before.    See Defendant Cha's Trial Testimony.

66. The Defendant Anyclo USA paid expenses and legal expenses include remaining payment of 2 years agreement + incentive. See Defendant Cha's Trial Testimony.

67. On February 23, 2018, Plaintiff Song followed through on his February 2018 e-mailed treat of "do not make further problem for the customer".   See Defendant Trial Exhibits D-22 (Attn, Cha 3rd line) See Defendant Cha's Trial Testimony.

68. On August 1, 2018, $97,286.46 was received from a third-party buyer (Moret) in the Defendant Anyclo USA bank account.

69. Again, Plaintiff's employee Cris Lee created false amount that is not an account way of calculation and has no proof of evidence. The money received from third-party buyer (More) funds in the amount of $97,286.46 was in the Defendant Anyclo USA's bank account. <u>See</u> Defendant Trial Exhibits D-31 (September 2018 bank statement) See Defendant Cha's Trial Testimony.

70. On February 26, 2018, Plaintiff Anyclo International unilaterally disconnect the company email. The money in the amount of $97,286.46 received from third-party buyer (Moret) was in the Defendant Anyclo USA's bank account. <u>See</u> Defendant Trial Exhibits D-31 (September 2018 bank statement) See Defendant Cha's Trial Testimony.

71. As of August 2, 2018, Defendant Anyclo USA's bank ending balance was $215,766.11.   The amount $415,939.78 that is created by Plaintiff Anyclo International's employee Cris Lee's false calculation that cannot be found nowhere, has no proof of evidence. See Defendant Cha's Trial Testimony.

72. Due to Plaintiff Anyclo International's lawsuit, Defendant Anyclo USA paid attorney fees for this litigation and paid Defendant YS Cha's incentive.   <u>See</u> Defendant Trial Exhibits D-29 (Row #9, 10). See Defendant Cha's Trial Testimony.

73. On December 19, 2018, Defendant Anyclo USA deposited to the <u>Court Order</u> <u>$176,712.35</u>. The amount of $415,939.78 is not exist and created false number by Plaintiff's employee Cris Lee.

74. Pursuant to the Court Order dated December 4, 2018, Defendant Anyclo sent the check out to Attorney McElroy Deutsch on same day. And the check was cleared at the bank on December 19, 2018.

75. Defendant's submission of the amount of $176,712.35 can be found from Defendant Anyclo USA's December 2018's bank statement.   <u>See</u> Defendant Trial Exhibits D-31 (December 2018 bank statement).    See Defendant Cha's Trial Testimony.

76. The Defendant Anyclo USA bank balance as of February 23, 2018, was $523,859.06. On March 16, 2018, after the meeting of Plaintiff Song and Defendant YS Cha to restore the third-parties buyers relationship by sending an apology e-mail and keep the remained term of 2 years of agreed monthly operation cost and incentive. Defendant YS Cha wired $250,000.00 to Plaintiff Song.  As a result of Plaintiff Song, Dong-Geun's continued deceit and unfaithful act, the Defendant Anyclo USA paid $104,000 remaining balance of 2 years of agreed operation cost of March to October, 2018 and sales incentive for 2 years of agreement during 2017~2018 was paid $21,186.28 for 2017 and $31,841.29 for 2018 including an additional sales

incentive of amount $97,286.46 received from third-party buyer (Moret) on August 1, 2018.   There was litigation fee also paid $45,278.76 by Defendant Anyclo USA company.   And ongoing litigation fee of $74,839.27 paid by Defendant YS Cha personal bank account.   See Defendant Trial Exhibits D-29 (Row #6, 7, 9, 10, 11, 14).   See Defendant Trial Exhibits D-31 (2018 February Bank Statement).   See Defendant Cha's Trial Testimony.

77. The deposit belongs to Cha and there is no legitimate reason to include office deposit in the Plaintiff's claims.   See Defendant Trial Exhibits D-1, See Defendant Exhibits D-2. See also Defendant Trial Exhibits D-3 See Defendant Cha's Trial Testimony.

78. Defendant Cha withdrew all deposits because Cha closed the bank account of Anyclo USA. See Defendant Cha's Trial Testimony.

## PROPOSED Conclusions of Law

This Court has original jurisdiction over this action between the parties, and the court has personal jurisdiction over the parties in this action.

A. Agreement between the Parties

The Defendants seeks to establish the enforceability of the contract formed between the parties, both orally and confirmed via email exchanges followed by performance by the parties.

In the State of New Jersey, oral contracts are acknowledged, save for a few exceptions, and hold weight under New Jersey law.   Per N.J.S.A. 25:1-5, specific contracts need to be in writing for enforceability. However, if the alleged agreement does not fall within these exceptions, it remains valid.

Also, emails are a widely accepted mode of formalizing and verifying agreements under New Jersey law.   The court acknowledged that email communications can form the basis for an enforceable contract, provided they meet necessary contractual elements.

Therefore, email correspondence constitutes contractual agreement when the essential elements of a contract are present as follows.

a.  Offer and Acceptance: Both are evident in the emails and discussions shared between the parties pursuant to Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 382, 164 A.2d 607, 614 (App. Div. 1960) held that the totality of correspondence could be pieced together to establish a binding contract.
b.  Consideration: Each party promised something of value pursuant to N.J.S.A. 12A:1-204 elucidates consideration in contracts.
c.  Meeting of the Minds: This is discernible from consistent email communication as referenced in New Jersey v. Strategic Environmental Partners, LLC, No. 12-2026, 2013 WL 6904892 (D.N.J. Dec. 31, 2013) recognized that mutual assent can be derived from electronic communications.
d.  Intent to be Bound: The email exchanges and conversations show clear evidence of both parties' intent in Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 749 A.2d 405 (App. Div. 2000), which the court established that external evidence, including emails, could indicate the parties' intent to be bound.

Therefore, the Courts reinforced that electronic communications can be indicative of a contract's terms and the parties' understanding, and the courts held that while complete specificity is desirable in contracts, the existence of some open terms does not invalidate an agreement if the parties intended to be bound.

Initially the parties met on September 26, 2016, then Defendant Cha had a meeting with Anyclo International's president Song Dong-Geun & its Director Jino Choi by MI Logix Choi,

Jin-woo's arrangement, because Plaintiff/Song Dong-Geun was seeking for a business expert in NY market to expand their US market. During the meeting Plaintiff/Song asked term which is 2 years of work & Incentive and the offer was accepted by defendant Cha to work together.

On October 15, 2016, we reached an agreement whereby Defendant Cha would set up Anyclo USA in New York, which would handle Anyclo International's receipts for merchandise sold in the United States. According to the initial agreement, Plaintiff would pay Defendant a lump sum of $12,000 per month over the course of two years, as well as a separated commission for sales by Anyclo USA at $0.05 per piece sold (approximately 1.5% of the total sales) the following month, after negotiating about how to calculate the commission, then Plaintiff agreed to raise lump sum amount to $13,000 per month.

On December 7, 2016, Anyclo USA was registered by Certified Public Accountant Daniel Cho.

On December 15, 2016, Anyclo USA received 1st order from NY customer RPR.

On December 18, 2016, incorporation document files from IRS 575A/ EIN#, Certificate of Incorporation and Common Share were sent to Plaintiff/Song Dong-Geun (a/k/a Song Hopkin) to sign and keep them safely.

On January 9, 2018, Plaintiff/Song sent an email that it is hard to wait for 2 years with small orders which untruthful statement because Defendant/Cha achieved sales volume in 2017 in the amount of $1,412,418,900. This is a quite a big amount to achieve within a year of sales volume considering company like Anyclo International which is barely known company in the supplier chains. This is the partly a reason where the Plaintiff wanted to break the contract.

During the operation of Anyclo USA from 2017 to 2018 Defendant Cha achieved total sales volume $1,412,418.99 and Defendant Cha by Anyclo USA wired $996,804.71 to Plaintiff/Song Dong-Geun.

While plaintiff deny having any documents regarding any sales after commencing this action, during Defendant's Motion Discovery, Defendant/Anyclo USA was informed Plaintiff/Song obtained additional orders from defendant Cha's NY Customers total volume $2,122,752.96 (Moret $990,165.20 + GIII $62,520.33 + Levy's group $1,070.067.43) and those customers are Defendant Cha's existing customers which defendant Cha had faithful relationship.

The Defendant Cha, through both oral discussions and consistent email communication, has shown a valid contractual relationship which he is not only entitled to the balance of contractual payment in the amount of $13,000 per month for the remaining term of the two year contract for the management of Anyclo USA , defendant Cha is also entitled to 1.5% of the Sales that he procured from his customers. Therefore, the Defendant's breach necessitates this Court's intervention to ensure justice.

B. Fraud

Defendant Cha denies all allegations of fraud levied by the Plaintiff. The Defendant's actions were solely predicated upon the explicit instructions given by the Plaintiff and cannot be construed as fraudulent.

For fraud to be established in New Jersey, the Plaintiff must prove that the Defendant made a false representation knowingly, intending the Plaintiff to rely on it, resulting in damages under Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494 (D.N.J. 2000), the federal court confirmed the requisite elements of fraud under New Jersey law.

In this pending action, the Defendant Cha merely assisted in generating invoices at the explicit behest of the Plaintiff, and no action was done independently, maliciously, or with a deceptive mindset.   If any reliance was placed on these invoices, it was a direct result of the Plaintiff's own instructions, not misrepresentation or misconduct on the Defendant's part.

It's paramount for the Plaintiff to demonstrate a clear link between the alleged fraudulent action and any ensuing damages as required by Bank of China v. NBM LLC, 359 F.3d 171 (2d Cir. 2004) clarified the importance of establishing causation in fraud claims, even in complex settings.

At all times Defendant Cha acted in good faith, having no reason to suspect or foresee any illicit use or harm from the requested invoices under the N.J.S.A. 12A:1-203 underlines the notion of good faith in performance and enforcement of duties.   The courts acknowledged the principle of good faith and highlighted the defendant's reasonable belief in their actions as pivotal in dismissing a fraud claim.

On October 17, 2016, Plaintiff informed via email Defendant Cha that the contract has been agreed and Sep-Up fee will be made in the name of commission, however plaintiff asked for a brief categorized breakdown needed to report Korea taxation due to a certain payment's regulation. Also, Anyclo International mentioned that Defendant Cha's monthly payment will be wired after opening of Anyclo USA bank account in the United States, so Plaintiff wanted to wire to Defendant's personal account instead until January 26, 2017.

In January 2017, Plaintiff requested to Defendant Cha that Plaintiff needed records purporting to breakdown Anyclo USA's expenses, for purposes of certain regulatory and tax reporting requirements in South Korea. Plaintiff was clear that the breakdown was primarily a formality and for that reason, did not need to accurately reflect Anyclo USA's expenditures. For that request and reasons in early 2017, Defendant Cha began supplying Debit Notes as to their guideline that purported to show a breakdown of Anyclo USA's expenses.

On February 7, 2017, Plaintiff by its owner Song sent Purchase Order instruction how to proceed to prevent possibility of US customs investigation in case there are questions about down valuation issues.

In September 18, 2017, Cris, one of Plaintiff's employees informed the defendant Cha that Plaintiff urgently needed a Confirmation Letter of Investment in order to satisfy certain Korean regulatory for wiring funds overseas. Cris also sent "sample format" to use.

The Defendant Cha's involvement was entirely dictated by the Plaintiff's requests. Thus, any subsequent actions based on the produced invoices should be viewed in light of the Plaintiff's overarching role.   Defendant's limited role and the plaintiff's primary involvement as factors negating a fraud claim.


C. Conversion

Defendant Cha categorically refutes the allegations of conversion presented by the Plaintiff. As demonstrated herein, the Defendant's actions adhered to prevailing laws, jurisprudential precedents, and existing agreements, thereby nullifying any alleged conversion claim.

To establish conversion, there must be an unauthorized dominion or control over the personal property of another that denies the rightful owner access or use which the court discussed the nuanced understanding of conversion under New Jersey law.

Defendant Cha, however:

a. Promptly Addressed Payments: Demonstrating a continual respect for property rights.
b. Reserved Funds in Good Faith: A protective action aligned with business prudence.
c. Abided by Agreed Terms: All funds were eventually disbursed per pre-established agreement, thus there was no denial of rights.

Established agreements between parties dictate the framework within which actions should be assessed. The Defendant's actions strictly adhered to these parameters illustrates the principle that actions in accordance with mutual agreements cannot form the basis for conversion.

Also, A conversion claim requires a clear deprivation of the owner's rights. The Defendant neither deprived the Plaintiff nor acted in opposition to the agreed terms which the charge of conversion is groundless.

New Jersey law mandates an obligation of good faith and fair dealing in contractual relationships. The Defendant's actions were anchored in this principle under N.J.S.A. 12A:1-304. In Pickett v. Lloyd's, 131 N.J. 457, 621 A.2d 445 (1993), the New Jersey Supreme Court elaborated on this implicit obligation, noting that actions consistent with the spirit of the agreement cannot be construed as a breach.

Conversion necessitates a clear intent to deny the rightful owner of their property. The Defendant Cha not only lacked this intent but acted in a manner reflecting the opposite.

While the equity considers the totality of circumstances, retaining funds temporarily for safety in the unpredictable business landscape is justified, especially when later actions confirmed the good faith disbursement in alignment with agreements, and equitable considerations were recognized in conjunction with conversion claims.

17

Given the overarching adherence to agreements, the clear absence of wrongful intent, and the underlying equitable considerations, the Plaintiff's conversion claim is baseless. The Court is urged to dismiss the claim in the interest of justice.

On April 27, 2017, New York customer made payment $203,524.40, and on May 2, 2017 Defendant wired $200,900.20 to Plaintiff/Song after deducting money as per Plaintiff/Song's January 4, 2017 instruction to drop $0.05/pc into Anyclo USA account.

On June 8 2017, NY customer Moret made payment $55,440 and on June 26, 2017 Defendant wired $54,555 to Plaintiff/Song, as per Plaintiff/Song's instruction to drop $0.05/pc into Anyclo USA account.

On August 15 2017, NY customer Moret made payment $320,345.68 and on August 21 2017 Defendant wired $315,881.63 to Plaintiff/Song as per Plaintiff/Song's instruction to drop $0.05/pc into Anyclo USA bank account.

Beginning in July, 2017, Plaintiff began breaching its agreement to make monthly payments to Defendant Cha. In August and September of 2017, Plaintiff's only commission $10,000 was remitted without any understanding.

On August 24, 2017, Plaintiff/Anyclo International wired only $10,000 without any explanation about $3,000 deficiency.   And Plaintiff continues to wire $10,000 only in month of September too.

On August 28, 2017, Plaintiff/Anyclo International starting with employee/Jay Kim and other employees Alice, Cris, Jake started making requests to Defendant to change the Purchase Order directly to Anyclo International and requested direct communication with NY customers which the defendant Cha developed which was in violation of the agreement. Defendant Cha became suspicious and worried.

In November 2017, Plaintiff again only paid $10,925.00.

In January 2018. Defendant revealed that Anyclo International's president Song had directed to his employees to sidestep Anyclo USA but that they place their order directly with Anyclo International, thereby depriving Anyclo USA of the commissions to which was entitled under the agreement. Defendant became suspicious and worried.

In August 15, 2017 New York customer Moret made payment $320,345.68 and on August 21 2017 Defendant Cha wired $315,881.63 to Plaintiff/Song as per Plaintiff/song's instruction to drop $0.05/pc into Anyclo USA account.

On Oct 25, 2017, Plaintiff wired Defendant's commission divided into two different amount $10,093.20 &  $3,000 without prior notice and Cris/Anyclo International's employee continuously request to change the Purchase Order to Anyclo International to take over NY customers that Defendant built for 25 years.

On November 28, 2017, Plaintiff/Anyclo International wired $10,925.13/commission to Defendant.  In December 2017 Plaintiff/Anyclo International remitted $0 for the month of

December. And on December 3, 2017, Plaintiff/Song insisted that defendant Cha to open communication with NY customers. Defendant Cha, trusting Plaintiff/Song allowed open communication since then, and Plaintiff took over the defendant's customers.

On January 17, 2018, Defendant Cha/Anyclo USA filed and paid taxes due of IRS Tax $4,938 and NY State DTF CT $2,739 on January 18, 2018 and NYC Dept Finance $2,140.00 on January 19, 2018.

In January and February of 2018, contrary to Plaintiff's claims, Defendant communication with Plaintiff was ongoing, involving meetings and scheduling with third party buyers as well as pricing.

On February 2, 2018, Plaintiff/Anyclo International's employee Jake Lee directly contacted NY customer Moret's Director Ms. Lori to release the Purchase Order sheets to Anyclo International from Anyclo USA for future orders, then removing Defendant Cha's contact from email communication. Plaintiff wants to change the Agent from defendant Cha to Anyclo International. Defendant Cha was deeply disappointed by Plaintiff's breach of the agreement. Defendant Cha never dealt with this type of company before in his 30 years business experience. Despite defendant Cha's effort to develop customers which brought a ton of customers for Plaintiff/Song, Song was committed to steal NY customers from Defendant Cha's intangible asset.

Defendant Cha's customers are NYGARD, RBX, REPUBLIC CLOTHING, ADJMI, REFLEX, ALO YOGA, AMAZON, BASIC RESOURCE, BENTEX, CATO, FAMILY DOLLAR, FREE COUNTRY, GBG, THE LEVEY'S GROUP, GIII, MERYL DIAMOND LTD, JAQUE MORET, MPG, etc within a year of working by Defendant Cha's with Plaintiff.

On February 4, 2018, Plaintiff/Anyclo International's employee/Jake Lee contacted NY customer Moret's Director Ms. Lori again repeating to request deal directly with the Plaintiff.

Up until February 2018 working communication was ongoing between Defendant Cha and Plaintiff/Anyclo International through Song's employee Jake Lee.

On February 23, 2018, Plaintiff and its owner Song sent a Legal Action notification.

On February 23, 2018, Defendants Cha and Kim noticed that Plaintiff/Song sent an email to NY customer Moret VP Mr. Anteby purposely disclosing unpleasant contents damaging Defendant Cha & Kim's reputation in the business community. Then Moret/VP replied with Defendant Cha & Kim's contact email added by cc. This reputation damage still remain on their records that they will never be able to recover.

In February 2018, Defendant Kim had a meeting with NY customer Moret VP Mr. Anteby during a meeting when he showed QC report to let Defendant Kim know Plaintiff/Song's own factory in Indonesia which is abusively managing his company employees.

On March 14, 2018 in Edgewater, New Jersey, Plaintiff/Song and one of his employee Jake Lee, and Defendants Cha and Kim had a meeting to resolve this legal disputes. Defendant's demand was an apology emails to defendant Cha & Kim's NY customers that Defendant Cha

built for his past 25 years working relationship, then Defendant Cha would wire the money. Plaintiff/Song even discussed with Defendant Cha to get started wholesale business together during that meeting. While Defendant wired $250,000 to Plaintiff/Song on March 20, 2018, but later realized that this was Plaintiff/Song's trick which he broke the agreement and never apologized.

After Plaintiff breached the agreement in March 2018, Defendant Cha was entitled to his contractual payments of $13,000 per month until the date Agreement was supposedly terminated. Defendant Cha was entitled to his agreed payments, and his action to pay is not conversion.


4. Counterclaim by Kim

The Defendant Kim seeks remuneration for labor and services rendered to the Plaintiff's company for over a year. Despite the absence of a formal written agreement, equity, fairness, and the law dictate that the Defendant is entitled to just compensation for services provided.

Quantum meruit, a well-established doctrine in New Jersey, states that a party who confers a benefit upon another, expecting compensation, is entitled to recover the reasonable value of services rendered, even in the absence of a contract. In VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994), wherein the New Jersey Supreme Court upheld the principle of quantum meruit, emphasizing the necessity to prevent unjust enrichment.   Also in Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60 (2002), the court articulated the concept of quantum meruit and its relevance to ensuring equitable compensation.   Given that the Defendant Kim rendered valuable services to the Plaintiff's company, the Defendant is entitled to compensation under the doctrine of quantum meruit.

In addition, the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, requires employers to compensate their employees for services provided. The absence of a formal agreement does not absolve an employer from this obligation, especially when services are accepted and utilized. The Law, N.J.S.A. 34:11-56a to 34:11-56a38, necessitates the payment of wages for work performed. The Plaintiff's avoidance of this statute's purpose and intent is clear given the facts, and the court affirmed the principle that employers cannot evade their responsibility to compensate workers for services under state and federal wage laws.

Also, under the Equitable estoppel, as recognized by New Jersey courts, prevents a party from taking a position inconsistent with prior actions to the detriment of another while the Plaintiff accepted and benefited from Defendant Kim's services for over a year. Plaintiff's actions, or inactions, led the Defendant to believe compensation would be forthcoming.

Finally, the doctrine of unjust enrichment provides that one party should not be unjustly enriched at the expense of another.   In St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America, 158 N.J. 73 (1999), the court affirmed the principle that unjust enrichment occurs when a party receives a benefit and retention of that benefit without payment would be unjust.   The Plaintiff's retention of the benefits of the Defendant's labor without compensation is a clear instance of unjust enrichment.

20

The Plaintiff's benefit from the Defendant's labor without providing compensation is the quintessence of unjust enrichment. In VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994), the New Jersey Supreme Court underscored the need to prevent unjust enrichment by ensuring parties pay for benefits received.

While typically applied to government contracts, the spirit of The New Jersey Prevailing Wage Act (N.J.S.A. 34:11-56.25) is emblematic of the state's stance on ensuring workers receive appropriate compensation for their labor.

On December 16 2016, Anyclo International's Director Jino Choi informed that Nam-Hee Kim email NHK@anyclo.com contact has created to join work for the Plaintiff.

On October 16, 2018, Defendant Kim even traveled to Indonesia factory to serve and assist the buyer's meeting for NY customer named Moret by its VP Mr. Anteby & President Mr. Debease.   After that meeting Plaintiff/Anyclo International received continuous and repeated orders, however, Plaintiff and its owner Song Dong-Geun never paid proper compensation for Nam-Hee Kim's work for the Plaintiff.

Defendant Kim worked a full time for the Plaintiff for 12 months and 13 days, and NH Kim's equitable compensation for her work to the plaintiff from February 14, 2016 to February 26, 2018 is $74,800.00 ($6000/month x 12 months and 13 days).

The principles of quantum meruit, equitable estoppel, and unjust enrichment, coupled with New Jersey's wage laws, necessitate that the Defendant Kim be compensated for the services rendered to the Plaintiff's company. The court is urged to recognize the Defendant's right to just and equitable remuneration.

### 5. Adjustments and Damages

This lawsuit should be resolved by a simple mathematical formula. Plaintiff proposed two (2) years of work and then shamefully breached the agreement to induce defendant Cha's NY market customers without business efforts. Anyclo USA was registered on December 7, 2016 and immediately received its very first order December 15, 2016 which was only possible based on Defendant Cha's ongoing business relationship and 25 years previous working history that Defendant Cha has built.

Therefore, Defendant Cha and Kim proved the adjustments and damages as follows.

1.   During 2 years of contract customers paid total amount is $1,412,418.99.00 and Plaintiff/Anyclo International wired to Defendant/Anyclo USA $185,018.33. Thus, total received amount is $1,597,437.32.

2. From total received amount $1,597,437.32, Defendant wired to Plaintiff in the amount of $996,804.71, and the balance in the amount of $600,632.61 was expensed as below.

3. Defendant paid IRS/NYS/NYC Tax $9,817.00.

4. Defendant paid Bank service charge $1,005.07.

5. Defendant deposited to the court $176,712.35.

6. 2 years of work contract amount is $13,000 x 24 month = $312,000.00.

7. Branch Initial set up fee paid amount $10,000.00.

8. During the Cha's work period from November 2016 to January 2018, Defendant receivable incentive 1.5% amount is $21,186.28.

9. During 2 years of work contract, after this action commenced, Defendant revealed additional incentive through Motion Discovery in the amount of $31,841.29.

11. Due to lawsuit by Plaintiff/Anyclo International, Defendant Anyclo USA paid 1st attorney fee $45,278.76.

12. Defendant NH Kim's equitable compensation for her work for the plaintiff from February 14, 2016 to February 26, 2018 is $74,800.00. ($6000/month x 12 months and 13 days) As shown in Defendants' Trial Exhibit D-29.

13. After adjustments above, defendants are entitled to the balance of $82,008.14.


*Due to lawsuit by Plaintiff/Anyclo International, Defendant Cha paid 2nd attorney fee $74,839.27 as of this date which is still ongoing.


Dated: August 28, 2023

Respectfully submitted,

/s/Sukjin Henry Cho
Attorney for Defendants